IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Criminal Action No. 06-83-GMS |
| | ) |
| ANTHONY MARK BRISCOE | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

**NOW COMES** the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Ilana Eisenstein, Assistant United States Attorney, and hereby provides the following Proposed Findings of Fact and Conclusions of Law, and respectfully requests that this Court find the defendant guilty of Counts I, II, and III of the Indictment.

**I.   INTRODUCTION**

On August 1, 2006, the Grand Jury for the District of Delaware returned a three-count Indictment against the defendant, Anthony Mark Briscoe, charging him in Count I with one count of possession with intent to deliver over 50 grams of cocaine base, on July 20, 2006, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and in Counts II and III with distribution of more than 5 grams of cocaine base on March 20, 2006, and April 14, 2006, respectively, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

The defendant filed a motion for a non-jury trial, which was held before this Court on May 21, 2007. At trial, the defendant stipulated to each of the elements of Counts II and III of the Indictment, and stipulated that, on July 20, 2006, he possessed a detectable quantity of cocaine base

with intent to distribute it. *See* Gov't Ex. 1; Trial Transcript, May 21, 2007 ("Tr."), at 20-21. The only contested issue at trial, therefore, was whether the defendant possessed more than 50 grams of cocaine base on July 20, 2006, as alleged in Count I of the Indictment. Gov't Ex. 1; Tr. at 4-6.

## II.  PROPOSED FINDINGS OF FACT

### A.  *Nature of the Investigation*

The Drug Enforcement Administration ("DEA") began its investigation of the defendant, Anthony Mark Briscoe, through the use of a Confidential Source ("CS"), who made controlled purchases of cocaine base, in the form of crack cocaine, from the defendant on March 20, 2006, and April 14, 2006. Tr. 25-26. On each occasion, the defendant arranged for the delivery of the crack cocaine during tape-recorded, monitored telephone conversations with the CS. Tr. 25-27. On March 20, 2006, the defendant distributed 25.4 grams of crack cocaine to the CS, and on April 14, 2006, he distributed 16.0 grams of crack cocaine to the CS. Gov't Ex. 1. Both transactions occurred in Wilmington, Delaware. *Id.*

On July 19, 2006, the DEA used the same CS to contact the defendant, who agreed to deliver two ounces of crack cocaine the following day. Tr. 29-30. Two ounces is equivalent to 56.6 grams. Tr. 30. On July 20, 2006, when the defendant arrived at the pre-arranged location to meet the CS and to deliver the drugs, law enforcement officers converged on the defendant's vehicle and placed him under arrest. Tr. 33.

The defendant's car was transported by DEA Special Agent Eric Miller to DEA Headquarters in Wilmington, Tr. 54, at which time it searched by DEA Special Agent David Hughes and Task Force Officer Thad Boyce. Tr. 35. The agents found a package containing two large rocks of separately packaged cocaine base under the rear passenger seat, which was admitted at trial as

Government Exhibit 3. Tr. 35-38; Gov't Ex. 3. Special Agent Hughes photographed and field-tested the substance, placed it into a heat-sealed envelope, weighed it in gross grams, and then locked it in a secure DEA storage facility. Tr. 37-40; Gov't Ex. 3. At all times, proper chain of custody was maintained with regard to the drugs seized, and they were handled in accordance with DEA's policies and procedures. Tr. 41-42, Gov't Ex. 1 (Stipulation 4); Gov't Ex. 3.

### B.    *Analysis of Government Exhibit 3*

#### 1.    DEA Analysis

The drugs seized from the defendant on July 20, 2006, contained in Government Exhibit 3, were analyzed by DEA forensic chemist Stacey Turner on September 12, 2006. Gov't Ex. 7. Ms. Turner first weighed the drugs with all of the packaging to obtain the gross weight of 80.0 grams. Tr. 72. She then removed the drugs from the packaging, and weighed the packaging alone. By subtracting the weight of the packaging from the gross weight, Ms. Turner arrived at the weight of the drugs themselves, which is called the net weight. Tr. 73-74. In this case, the net weight of the drugs seized on July 20, 2006, was 51.59 grams. Tr. 77; Gov't Ex. 5; Gov't Ex. 7. Ms. Turner testified, however, that she could not remove all of the drugs from the bag when weighing it, meaning that the reported weight was slightly lower than the total weight of the drugs seized. Tr. 74-75.

The scale used to measure the sample is calibrated at the DEA laboratory on a monthly basis and is calibrated annually by an outside agency. Tr. 77-78. The scale is certified as accurate to the hundredth of a gram, or two decimal places. Tr. 79; *see also* Gov't Ex. 10 (calibration report). Since the drug weight was reported to the tenth of a gram, as 51.5 grams, Ms. Turner testified that the scale

was "a hundred percent accurate to the weight that she weighed for this exhibit." Tr. 79; Gov't Ex. 5.

After weighing the drugs, Ms. Turner ground the sample and used 1.5 grams of the drugs for additional testing. Tr. 75-76. The reserve weight, which is the weight of the drugs remaining after the testing is complete, was 50.0 grams. Tr. 75, Gov't Ex. 5.

2.  Defense Re-weigh of Government Exhibit 3

After the DEA analysis, the defense sent Government Exhibit 3 to be re-weighed by Dr. Margaret Beth Minnigh.[1] Dr. Minnigh re-weighed the drugs contained in Government Exhibit 3, in January 2007 — six months after their seizure and four months after the initial analysis — and measured the weight at that time as 47.41 grams. Video Deposition Transcript [Depo. Tr.], at 8; *see also* Order on Defendant's Motion for Re-Weight (12/06/06). Dr. Minnigh explained that she weighed the sample by removing the drugs from the packaging, placing them in a "weighing boat" — a small, plastic bowl that was placed onto the scale. Depo. Tr. 15-16. The sample was so moist when Dr. Minnigh received it that she could not remove all of the drugs from the bag, such that there was an unspecified quantity of drugs remaining in the bag which was not included in her reported weight. Depo. Tr. 9, 14. She could not estimate the percentage or the absolute amount of drug evidence that was left inside the bag and not weighed. Depo. Tr. 16.

3.  Crack Cocaine Diminishes in Weight Over Time

DEA Special Agent Eric Miller, who has extensive training and experience in the manufacture or "cooking" of crack cocaine, testified that crack cocaine is made by dissolving powder

---

[1] By agreement of the parties, and order of this Court, Dr. Minnigh testified by video deposition on May 16, 2007.

4

cocaine in water, adding baking soda, and then applying a heat source to the mixture. Tr. 59-60. The water is absorbed into the crack cocaine during the cooking process, and eventually, the crack cocaine hardens into a wax-like consistency. Tr. 61. Over time, however, the crack cocaine begins to break down and liquefy, and will lose weight due to the evaporation of the water. Tr. 61-62; 64.

Ms. Turner agreed that, over time, crack cocaine becomes wet and then loses moisture due to the evaporation of the water used in the cooking process, causing the sample to diminish in weight. Tr. 80. She further explained that this weight loss will occur more rapidly if the sample is exposed to the air, Tr. 81; however, evaporation can take place even if crack cocaine is stored in a sealed bag because the plastic packaging continues pores through which the water can escape. Tr. 80-81; 97-98. Moreover, the rate of evaporation is increased where, as here, the crack cocaine has been ground, because grinding exposes more surface area to the atmosphere. Tr. 82. Crack cocaine will not, on the other hand, gain weight over time. Tr. 64, 80-81.

4. <u>The Crack Cocaine Seized From The Defendant Had Begun to Break Down and Lose Weight Between The Initial Weighing and the Re-Weigh of the Drugs Four Months Later.</u>

Based on its appearance and consistency, the crack cocaine seized from the defendant appeared to have been recently cooked when it was seized from the defendant on July 20, 2006. Tr. 63; Gov't Ex. 2 (showing crack cocaine at time it was discovered); Gov't Ex. 4 (same). However, by the time it was tested by the DEA laboratory, on September 12, 2006, the sample had already begun to become moist. Tr. 97; 102-103; Gov't Ex. 7. This moisture indicates that the crack cocaine had started to break down. Tr. 63; 102-103. Dr. Minnigh also noted that the sample was very wet when she weighed it approximately four months later. Depo. Tr. 9; 13. The moisture observed by Ms. Turner and Dr. Minnigh indicates that the breakdown process was already

underway when the DEA initially weighed the sample in September 2006, and had continued during the time between that initial analysis and the re-weigh of the drugs by Dr. Minnigh in January 2007. Tr. 63. Based on these observations and her measurements, Ms. Turner concluded that she is "a hundred-percent confident" that the cocaine base weight over 50 grams as of July 20, 2006. Tr. 82.

### III. PROPOSED CONCLUSIONS OF LAW

#### A. *The Defendant Stipulated to Each of the Elements of Counts II and III of the Indictment, and Therefore Should be Found Guilty on Each Count.*

The defendant was charged with two counts of distribution of more than 5 grams of cocaine base ("crack"), on March 20, 2006 (Count II), and April 13, 2006 (Count III), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

The elements of this offense are: (1) the defendant possessed a controlled substance; (2) the defendant knew that he possessed some type of controlled substance; (3) the defendant distributed that substance; and (4) the substance weighed more than 5 grams and contained a detectable amount of cocaine base. *See id.*; *United States v. Barbosa*, 271 F.3d 438, 444 (3d Cir. 2001).

The defendant stipulated to each of the elements of this offenses and admitted that he distributed 25.4 grams of cocaine base (crack) on March 20, 2006, and 16.0 grams of cocaine base (crack), on April 14, 2006. Gov't Ex. 1. Moreover, the evidence at trial established that the defendant arranged for the delivery of approximately one ounce of crack cocaine on both occasions, and delivered the drugs to the CS during two separate controlled purchases. Tr. 25-27. The evidence, therefore, establishes beyond a reasonable doubt that the defendant is guilty of the offenses charged in Counts II and III of the Indictment.

### B. The DEA Analysis Accurately Measured the Weight of the Drugs as 51.5 Grams, Which Was At Least Them Amount Of the Crack Cocaine Possessed by the Defendant on July 20, 2006.

Count III of the Indictment charges the defendant with possession with intent to distribute more than 50 grams of cocaine base on July 20, 2006, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

The defendant stipulated that, on July 20, 2006, he knowingly possessed with intent to distribute cocaine base ("crack"). Gov't Ex. 1. The only remaining question as to Count III of the Indictment, therefore, was the amount of cocaine base possessed by the defendant on that date. The evidence at trial established beyond a reasonable doubt that the defendant possessed more than 50 grams of cocaine base on July 20, 2006, and thus that he is guilty of the offense charged in Count III of the Indictment.

Drug weight is determined by the net weight of the cocaine base possessed by the defendant on July 20, 2006. The DEA measured the net weight on September 12, 2006, and reported that the cocaine base weighed 51.5 grams at that time. Gov't Ex. 5; Tr. 73-74; 77. The scale used to measure the weight is calibrated to be accurate to the hundredth of a gram, or two decimal places. Tr. 79; *see also* Gov't Ex. 10 (calibration report). Since the drug weight was reported to the tenth of a gram, the government's expert, Ms. Turner, rightly concluded that the scale was "a hundred percent accurate to the weight that she weighed for this exhibit." Tr. 79.

Indeed, if anything, the DEA's reported weight of 51.5 grams understates the amount of cocaine base possessed by the defendant on July 20, 2006, for four reasons. First, Ms. Turner testified that she could not remove all of the drugs from the bag when weighing it, and the drugs which remained inside the packaging were not included in the reported weight. Tr. 74-75.

7

Second, the net weight measured by the scale was 51.59 grams. Gov't Ex. 7. However, since it is DEA policy only to report drug weights to a tenth of gram, the weight was truncated to 51.5 grams in the DEA's report without rounding up. Tr. 77; Gov't Ex. 5.

Third, the evidence was that the defendant had specifically arranged via monitored telephone conversations to deliver two ounces, or 56.6 grams, of crack cocaine to the CS on July 20, 2006. Tr. 29-30. That arrangement strongly suggests that the defendant did in fact possess that amount of crack cocaine, and certainly more than 50 grams of crack cocaine, when he arrived at the meeting location.

And finally, it was undisputed that crack cocaine loses weight over time through the evaporation of the water used in its manufacture.[2] Tr. 64, 80-81. Conversely, both Special Agent Miller, in his 17 years as a DEA narcotics agent, and Stacey Turner, in her 9 years as a DEA forensic chemist, testified that they had *never* seen a case in which crack cocaine had gained weight over time.[3] Tr. 64, 80-81, 83. As the water evaporates from crack cocaine, it begins to visibly break down by becoming moist, and eventually liquefying. Tr. 62; 103. This process

---

[2]Dr. Minnigh, the defense's expert, also recognized that it is common for drug weights to vary over time, however, she lacked specific experience with the changes in the weight of crack cocaine. Depo. Tr. 9-10, 13.

[3]During the cross-examination of Ms. Turner, the defense introduced evidence of slight discrepancies between the gross weight measured by the DEA agents in the field and the gross weight measured by the DEA forensic chemist. The gross weight is the weight of the drugs plus all of the packaging.
As to Government Exhibit 3, for example, the gross weight measured in the field was reported as 79.62 grams, while the forensic chemist found the gross weight to be 80.0 grams. Tr. 87. This difference, however, does not suggest an actual increase in the weight of the cocaine base in that exhibit. The scale used by the DEA agents in the field was a different scale than that used by the DEA laboratory. Tr. 101. Ms. Turner explained that it is common for there to be some discrepancy between the gross field weight and the gross weight obtained by the chemist due to differences in calibration of the scale. Tr. 102.

can occur even if the crack cocaine is stored in a sealed plastic bag, because the bag is sufficiently porous to permit some degree of evaporation. Tr. 80; 98.

In this case, it was clear that the cocaine base in Government Exhibit 3 had already begun to break down, moisten, and lose weight by the time it had been weighed by Ms. Turner on September 12, 2006. Tr. 71; 102-103. Ms. Turner made a hand notation that the sample was "extremely wet," see Gov't Ex. 7, and explained that it is common practice to make such a note when the sample appears wet precisely because of the weight loss over time. Tr. 103. Based on these observations and her measurements, Ms. Turner concluded that she is "a hundred-percent confident" that the cocaine base weight over 50 grams as of July 20, 2006. Tr. 82.

After calculating the weight of the sample, Ms. Turner performed several other tests, during the course of which the sample was ground into finer pieces. Tr. 71. The grinding of the sample exposed more surface area, and would have accelerated the rate of evaporation and weight loss of the sample in the time following the initial tests. Tr. 82. In addition, the testing process consumed an additional 1.5 grams of the cocaine base, leaving a reserve weight of 50.0 grams. Tr. 75; Gov't Ex. 5.

### C.   *The 2.6 Gram Decrease in Drug Weight, From the Reserve Weight of 50.0 Grams to the Subsequent Re-weigh of 47.4 Grams, Was Attributable to Evaporation and to the Failure to Re-Weigh All the Drug Evidence.*

Four months after the DEA's initial analysis of Government Exhibit 3, the defense had an independent expert, Dr. Minnigh, re-weigh the sample. In January 2007, Dr. Minnigh found that the cocaine base had decreased in weight by an additional 2.6 grams from the reserve weight of 50.0 grams to a weight of 47.41 grams. Depo. Tr. 8.

The 2.6 gram, or 5%, decrease in net weight between the initial DEA analysis on September 12, 2007, and the re-weigh of the sample by the defense expert in January 2007, is attributable to the evaporation of water from the crack cocaine during the four months which elapsed between tests. While the sample had already started to break down at the time it was initially weighed by the DEA laboratory, following the grinding of the sample and its exposure to air during the testing process, the break down, evaporation, and weight loss would have continued at an increased rate, in the months preceding the re-weigh by Dr. Minnigh. Tr. 82. This continued breakdown and weight loss of the drugs was evidenced by the significant moisture of the drug sample observed by Dr. Minnigh when she analyzed it in January 2007. Depo Tr. 9, 13.

Recognizing that crack cocaine loses weight over time, federal courts have consistently found that the weight of the exhibit when it is first weighed should control, and have determined guilt and sentenced defendants on that basis. *See, e.g., United States v. McGrady*, 97 F.3d 1042, 1043 (8th Cir. 1996) (sentencing defendant on basis of initial weight of 37.22 grams of crack cocaine, where court attributed decrease of 12.8% to 32.45 grams at the second weighing one year later, to evaporation of the crack cocaine); *United States v. Tucker*, 20 F.3d 242, 243 (7th Cir. 1994) (attributing weight loss in crack cocaine sample to evaporation where the sample of crack cocaine decreased in weight from 5 grams to 4.04 grams, or 18%, over a period of several months and sentencing defendant on the basis of the higher weight); *United States v. Thomas*, 11 F.3d 620, 631-32 (6th Cir. 1993) (affirming district court's reliance on government chemist's weighing of crack cocaine at 53.6 grams, rather than independent weighing, six months later of 49.5 grams, where differing results were attributable to loss from testing and evaporation).

In addition, by the time that Dr. Minnigh received the sample, it had become so moist that she was unable to remove all of the drugs from the bag. Depo. Tr. 13; 16. Dr. Minnigh could not however estimate, in absolute terms or as a percentage of the total, how much of the drug sample was left inside the bag that was not included in the reported weight.[4] Tr. 9, 14, 16. So not only would the crack cocaine have diminished by virtue of evaporation, but also Dr. Minnigh's report underestimated the true weight of the sample because she was unable to scrape all the ground sample out of the packaging onto the weighing boat.

Given the evidence of weight loss and the evidence that an unspecified amount of drugs were not included in the second analysis, there is nothing in the subsequent re-weigh that establishes a reasonable doubt as to the accuracy of the initial weight of 51.5 grams, or which refutes that the defendant possessed at least 51.5 grams of cocaine base in the form of crack cocaine on July 20, 2006.

---

[4]Dr. Minnigh testified that she weighed the drugs by opening the bag and shaking the drugs onto a weighing boat, which is then placed on the scale to be weighed. She estimated that less than a tenth of a gram would be left in the weighing boat after the drugs were returned to evidence, Tr. 14-15, but she was unable to give an estimate for the amount of drugs which were not weighed because they were stuck to the sides of the original bag. Tr. 16.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court find that the defendant possessed over 50 grams of cocaine base on July 20, 2006, and find the defendant guilty of Counts I, II, and III of the Indictment.

                                        Respectfully submitted,
                                        COLM F. CONNOLLY
                                        UNITED STATES ATTORNEY

BY: /s/Ilana H. Eisenstein
      Ilana H. Eisenstein
      Assistant United States Attorney

Dated: June 13, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Criminal Action No. 06-83-KAJ |
| | ) | |
| ANTHONY MARK BRISCOE | ) | |
| | ) | |
| Defendant. | ) | |

### CERTIFICATE OF SERVICE

I, Jennifer Brown, an employee in the Office of the United States Attorney, hereby certify under penalty of perjury that on June 13, 2007, I electronically filed:

### GOVERNMENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

with the Clerk of Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF, which will send notification of such filing(s) to the following:

John S. Malik, Esquire
100 E. 14th Street
Wilmington, DE 19801-3255

           /s/Jennifer Brown
           Jennifer Brown