**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     C.A. No. 06-83-GMS |
| | : |
| ANTHONY MARK BRISCOE, | : |
| | : |
| Defendant. | : |

**DEFENDANT'S PROPOSED FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**

**COMES NOW,** Defendant Anthony Mark Briscoe, by and through his attorneys, John S. Malik and Jay C. Whittle, and respectfully requests that this Honorable Court find Defendant Briscoe <u>Not</u> <u>Guilty</u> of Count I of the Indictment, to wit, Possession with Intent to Distribute More than 50 Grams of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii), but guilty of Possession with Intent to Distribute More than 5 Grams of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Defendant Briscoe hereby provides the following Proposed Findings of Fact and Conclusions of Law in support of his position:

**I.     INTRODUCTION**

On or about August 1, 2006, Defendant Briscoe was indicted on the following charges: one count of Possession with Intent to Distribute More than 50 Grams of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii); and, two counts of Possession with Intent to Distribute More than 5 Grams of Crack Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).

On May 21, 2007, a bench trial was held before the Honorable Gregory M. Sleet in which Defendant Briscoe stipulated to the allegations charged in Counts II and III of the Indictment, namely, two counts of Possession with Intent to Distribute More than 5 Grams of Crack Cocaine.  Furthermore, Defendant Briscoe stipulated to all elements of Count I of the Indictment charging Possession with Intent to Distribute Crack Cocaine except the allegation that the weight of the crack cocaine was in excess of 50 grams. Therefore, the sole issue before the Court is whether the government proved beyond a reasonable doubt that the crack cocaine that Defendant Briscoe possessed with intent to distribute in Count I of the Indictment weighed more than 50 grams.[1]  [TT at 4-6.]

## II.    PROPOSED FINDINGS OF FACT

### A.    The Investigation

In the Spring of 2006, the Drug Enforcement Administration, (DEA), conducted an drug investigation as a result of information received from a confidential source, (CS), alleging that Defendant Briscoe was involved in selling crack cocaine in Wilmington, Delaware.  The CS was able to arrange controlled buys from Defendant Briscoe that DEA Agents monitored on three separate occasions, specifically, March 20, 2006; April 14, 2006; and, July 19, 2006.  [TT at 25-28.]  On March 20, 2006 and April 14, 2006, Defendant Briscoe distributed more than 5 grams of crack cocaine, but less than 50 grams of crack cocaine.  On July 19, 2006, Defendant Briscoe possessed with intent to distribute more than 5 grams of crack cocaine; however, he contests the government's allegation that the amount of crack cocaine he possessed with intent to distribute on that occasion

---

[1]    "TT" refers to a page of the transcript from the May 21, 2007 trial held in the United States District Court for the District of Delaware.  "DT" refers to a page from the May 16, 2007 videotaped trial deposition of M. Beth Minnigh, Ph.D., the defense expert witness.

weighed in excess of 50 grams and consequently triggers the ten year mandatory term of incarceration set forth in 21 U.S.C. § 841(b)(1)(A).

Mr. Briscoe was arrested by law enforcement authorities on July 19, 2006 when he arrived at a location upon which he and the CS had agreed in Wilmington and to which he was to deliver a quantity of crack cocaine.  [TT at 22.]

**B.    Trial Testimony of DEA Agent David B. Hughes**

DEA Agent David B. Hughes testified that three separate controlled buys had taken place involving Mr. Briscoe.  Specifically, the first controlled buy was conducted on March 20, 2006 and was to involve one ounce of crack cocaine for the price of $800.00.  [TT at 26-27.]  Agent Hughes explained that when the "one ounce" of crack cocaine purchased in the March 20, 2006 controlled buy was packaged for shipment to the Northeast Regional DEA laboratory for testing, the gross weight of the drugs and envelope shipped was 51.83 grams.  [TT at 44.]

Agent Hughes further related that the CS attempted to purchase two ounces of crack cocaine from Defendant Briscoe on April 14, 2006; however, Defendant Briscoe was unable to supply two ounces of crack cocaine on that occasion.  [TT49-50.]  Thus, the CS purchased one ounce of crack cocaine from Mr. Briscoe on that date for the sum of $800.00.  [TT26-27.]  When the "one ounce" of crack cocaine purchased on April 14, 2006 was packaged for shipment to the Northeast Regional DEA laboratory for testing, the gross weight of the drugs and the envelope was 41.35 grams.  [TT45-46.]

On July 19, 2006, Defendant Briscoe was to make a delivery of two ounces of crack cocaine to the CS for a price of $1,600.00.  [TT at 27,29.]  Once again, Agent Hughes had the crack cocaine purchased on July 19, 2006 packaged for shipment to the

DEA Northeast Regional laboratory.  Agent Hughes testified that the gross weight of the drugs and the envelope was 79.62 grams.  [TT at 46-47.]

During the course of his testimony, Agent Hughes explained that one ounce is equal to 28.3 grams.  [TT at 30.]  He also related based on his personal experience that on numerous occasions when one ounce quantities of cocaine were supposed to be sold, the actual amount sold was less that 28.3 grams resulting in the seller "shorting" the buyer. [TT at 51.]

### C.    Trial Testimony of DEA Agent Eric G. Miller

The government called DEA Agent Eric G. Miller as its next witness at trial.  [TT at 52.]  Agent Miller testified that it was his experience that over time, crack cocaine would "lose moisture" and "liquefy".[2]  [TT at 62.]  Additionally, Agent Miller conducted a visual examination in court of the sample of crack cocaine sold by Defendant Briscoe to the CS on July 19, 2006 and described it as appearing as if it had been ground down; was starting to adhere to the bag; was becoming wet; and, was starting to break down.  [TT at 63.]  He further testified that the weight of crack cocaine will decrease over time because of the evaporation of moisture and that he never witnessed a case where the weight of crack cocaine increased with the passage of time.  [TT at 64.]

### D.    Trial Testimony of Stacey Turner

Stacey Turner testified that she was employed as a chemist by the DEA.  [TT at 67.]  She related that on September 8, 2006, she first received the sample of crack cocaine seized from Defendant Briscoe on July 19, 2006 and that it appeared at that time as a yellow rock-like substance; pieces of rock; and, "just broken pieces of a solid

---

[2]    The concept of a solid substance "liquefying" as moisture evaporates from it is seemingly inconsistent and contradictory.

matter".  [TT at 70.]  She explained that she did not notice any moisture in the sample at

first.  However, when she ground up the sample for testing, she observed that it was very

moist inside.  [TT at 70-71.]  Ms. Turner testified that the net weight of the July 20, 2006

crack cocaine sample was 51.59 grams.[3]  [TT at 77.]  Pursuant to DEA policy, the weight

of the sample was truncated to 51.5 grams in her DEA lab report.[4]  [TT at 77.]

During her direct examination, Ms. Turner claimed that crack cocaine tends to

lose weight over time because the water in it evaporates while it is in the heat-sealed,

airtight bag in which it is packaged.  [TT at 80,97-98.]  She professed that she had never

seen a case in her experience where crack cocaine had gained weight with the passage of

time.  [TT at 80-81.]   Despite Ms. Turner's general statement that crack cocaine

decreases in weight over time due to the evaporation of water, she was unaware of the

rate at which water would evaporate from crack cocaine or the rate at which the weight of

a sample of crack cocaine would decrease during a known period of time due to the

evaporation of water.  [TT at 81,96.]  She did testify that the evaporation of water would

occur more rapidly when a bag containing crack cocaine was opened for testing in the

lab.  [TT at 81-82.]  However, she noted that the bag containing the crack cocaine seized

on July 19, 2006 was only open for between one and four minutes at most during her lab

---

[3]       The crack cocaine samples sold by Mr. Briscoe on March 20, 2006 and April 14, 2006 were also
weighed by Ms. Turner and were found to have net weights of 25.41 grams and 16.08 grams respectively.
[TT at 89-90.]  According to DEA Agent Hughes, both the March 20, 2006 and April 14, 2006 crack
cocaine sales arranged between the CS and Mr. Briscoe were to have involved one ounce quantities or 28.3
grams of crack cocaine for a price of $800.00 per ounce.  [TT at 26-27.]  It is noteworthy that the quantities
delivered on both occasions weighed slightly or substantially less that 28.3 grams proving DEA Agent
Hughes' testimony that it is common for sellers of crack cocaine to "short" their buyers by delivering less
than the quantity upon which the seller and buyer actually had agreed.  [TT at 51.]  This practice of
"shorting" as witnessed in the instant case also strongly suggests that the two ounce quantity of crack
cocaine to be delivered by Mr. Briscoe on July 19, 2006 was going to be either slightly or substantially less
than two ounces or 56.6 grams.

[4]       Ms. Turner also testified that 1.5 grams of the 51.5 gram crack cocaine sample was consumed in
testing and that the net weight of the July 19, 2006 crack cocaine sample after testing was 50.0 grams.  [TT
at 91.]

testing.  [TT at 81-82,100.]  Ms. Turner also stated that although the relative humidity of the lab in which the crack cocaine was weighed would affect the rate of evaporation of water from the crack cocaine, the DEA lab in which she weighed the sample in question was not regulated for humidity.  [TT at 100.]

Ms. Turner stated that the first step in her lab analysis of the July 19, 2006 drug sample was to determine its gross weight, which was the entire weight of the crack cocaine as well the packaging in which the crack cocaine was contained.  [TT at 72.] After determining the gross weight, Ms. Turner recounted that she measured the net weight by emptying the bag and weighing the contents of the bag only.  [TT at 72-73.] She indicated that it is her practice to get the majority of the contents of the bag out of the bag for weighing; but, she does not scrape "every last residual amount out".  [TT at 74.]

On cross-examination, Ms. Turner testified that she found the gross weight of the cocaine in question to be 80.0 grams.  [TT at 87.]   This stood in contrast to the gross weight of the same sample of 79.62 grams as determined by the DEA Agents who had sent her the package.  [TT at 87.]  Ms. Turner readily admitted that the gross weight of the July 19, 2006 sample of crack cocaine had increased from the time it was sent to her lab by the DEA Agents until the time she analyzed the sample.  [TT at 87-88.]  Her testimony in this regard was inconsistent with her prior testimony that she had never seen a case where the weight of a crack cocaine sample increased over time.  [TT at 80-81.]

Ms. Turner's proposition that the weight of a crack cocaine sample will not increase over time was additionally contradicted when she compared the gross weight she measured for the crack cocaine sample purchased on April 14, 2006 to the gross weight of the same April 14, 2006 sample as determined by the DEA Agents who sent it to her.

Ms. Turner found the gross weight of the April 14, 2006 crack cocaine sample to be 52.1 grams; whereas, the DEA Agents found the gross weight of this sample to be 51.83 grams.  [TT at 84-85.]  Once again, Ms. Turner admitted that the gross weight of the sample had <u>increased</u> over time.  [TT at 85.]

Interestingly, variations in the weight of a particular drug sample did not appear to be unusual occurrences at the DEA lab in Ms. Turner's experience.  When asked by the Court how she would account for the increase from 79.62 grams to 80.0 grams from the time when the July 19, 2006 sample was weighed by the DEA Agents to the time when it was weighed by her at the DEA lab, Ms. Turner testified:

> Well, I don't want to say anything negatively about our agents.  But **it is a common practice with the chemists that our weights tend to be off.**

[TT at 102.]  [Emphasis added.]  Ms. Turner continued in responding to the Court by speculating that the increased weight in the sample may have been related to "the calibration of the balances".  [TT at 102.]  However, no specific details regarding the "calibration of the balances" were offered by Ms. Turner.

At no time during her testimony did Ms. Turner indicate that her opinion that the weight of the July 19, 2006 crack cocaine sample weighed in excess of 50 grams was rendered to a reasonable degree of scientific probability or certainty.

**E.    The Defense Case - Deposition Testimony of M. Beth Minnigh, Ph. D.[5]**

Dr. M. Beth Minnigh testified that she has been employed for the past twenty two years by ALTCS Lab, formerly known as Pharmakon R & D, at the University of Pittsburgh, where she presently is the director of research and quality control.  [DT at 2-

---

[5]    A video trial deposition of Dr. Minnigh was conducted on May 16, 2007.  Copies of the video deposition and a transcript of Dr. Minnigh's trial deposition testimony have been provided to the Court and the government.

3.]  As part of her job duties, she also serves as lab manager.  [DT at 3.]  Dr. Minnigh

holds a B.S. in Chemistry and a Ph.D. in Pharmacology from the University of

Pittsburgh.  She teaches several pharmacology courses at the University of Pittsburgh and

Carlos University.  [DT at 4.]

Dr. Minnigh explained that in December of 2006, she was retained by counsel for

Mr. Briscoe to conduct a re-weighing of the sample of cocaine seized from Mr. Briscoe

on July 19, 2006.  [DT at 7.]  In the course of conducting the re-weighing, Dr. Minnigh

followed all proper scientific principles for weighing a sample of a controlled substance.

[DT at 7.]  She observed the sample of crack cocaine to be rather moist and comprised of

small chunk-like pieces that had not been completely ground.  [DT at 9,15,16.]  She

removed as much of the cocaine sample as she could from the plastic bag, but noted that

some residue of the sample remained in the bag due to the moist condition of the sample.

[DT at 9,16.]  The result of Dr. Minnigh's re-weighing of the July 19, 2006 crack cocaine

sample was 47.41 grams.  [DT at 8,12.]  Dr. Minnigh testified that her expert opinion that

the net weight of the July 19, 2006 crack cocaine sample was 47.41 grams was rendered

to a reasonable degree of scientific probability.  [DT at 10.]

Dr. Minnigh's inability to empty the entire contents of the bag was identical to

Ms. Turner's experience in attempting to empty the contents from the bag.  Ms. Turner

testified that she was "sure there was" crack cocaine residue left in the bag and that it was

not her practice to scrape out every last bit of residue.  [TT at 74.]  Also, like Ms. Turner,

Dr. Minnigh noted that it is common for variances in weight when multiple weighings of

drug samples are conducted.  [DT at 10.]

[8]

III.     **PROPOSED CONCLUSIONS OF LAW**

A.     **Defendant Briscoe is Guilty of Counts II and III of the Indictment.**

In Counts II and III of the Indictment, Defendant Briscoe was charged with two counts of Possession with Intent to Distribute more than 5 grams of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  Mr. Briscoe stipulated to all essential elements of these charges and in essence admitted his guilt.  Therefore, Mr. Briscoe must be adjudged guilty of the offenses set forth in Counts II and III of the Indictment.

B.     **Drug Quantity Must Be Proved Beyond a Reasonable Doubt.**

The statutory penalties in 21 U.S.C. § 841 are principally determined by the quantity of the particular controlled substance under consideration.  For most of the common controlled substances, except marijuana, there are the following three tiers of penalties:  10 years imprisonment to life for drug amounts at or over the highest threshold amount[6]; 5 to 40 years imprisonment for drug amounts under the highest threshold amount, but at or over the next highest threshold amount[7]; and, 0 to 20 years imprisonment for amounts falling under the latter threshold amount[8].  Based upon the United States Supreme Court's holding in the case of Apprendi v. New Jersey, 120 S.Ct. 2348 (2000). aggravating drug quantities that increase the statutory maximum sentence are considered essential elements of a criminal offense that must be charged in the indictment and that must be proved to and found by the trier of fact, whether a jury or a judge at a bench trial, beyond a reasonable doubt.  In the case sub judice, the government must prove beyond a reasonable doubt that the crack cocaine that Defendant Briscoe

---

[6]       See 21 U.S.C. § 841(b)(1)(A).

[7]       See 21 U.S.C. § 841(b)(1)(B).

[8]       See 21 U.S.C. § 841(b)(1)(C).

possessed with intent to distribute on July 19, 2006 weighed in excess of 50 grams as alleged in the Indictment in violation of 21 U.S.C. § 841(b)(1)(A).

When the amount of a drug involved in a case is uncertain, a district court must err on the side of caution in determining the quantity of the drug for which it will hold the defendant accountable.  See United States v. Gill, 348 F.3d 147, 151 (6th Cir. 2003), citing United States v. Copeland, 321 F.3d 582,602 (6th Cir. 2003).  Regarding determinations of the weight of crack cocaine, it has been held that it is error for district courts to take judicial notice of the claim that a quantity of cocaine will decrease in weight over time.  See United States v. Boyd, 289 F.3d 1254, 1259 (10th Cir. 2002), holding that the district court erred in taking judicial notice of government's claim that 50 grams of cocaine will decrease by 3.34 grams over the course of eight months in a case where government's expert determined the weight of a disputed quantity of cocaine to be 53.15 grams and the defendant's expert determined the weight of the same quantity of cocaine to be 49.81 grams.

It is noted that the decisions in the cases cited above, as well as the decisions in cases[9] that have upheld the findings of district courts that crack cocaine can decease in weight over time through evaporation were all made in the context of Sentencing hearings rather than in the context of a trial.  As such, a significantly different and less stringent standard of proof was utilized by these district courts in reaching their decisions.  As previously indicated, the standard of proof for the instant case is that of proof beyond a reasonable doubt since a finding that the weight of the crack cocaine in question

---

[9]    See United States v. McGrady, 97 F.3d 1042, 1043 (8th Cir. 1996); United States v. Tucker, 20 F.3d 242, 243 (7th Cir. 1994); and, United States v. Thomas, 11 F.3d 620, 631-632 (6th Cir. 1993), all cited by the government in the case at bar as Sentencing hearing decisions where the district courts accepted the government's theory that the weight of crack cocaine could decrease over time through evaporation.

exceeded 50 grams is an element of the offense charged in Count I of the Indictment and increases that statutory maximum penalty faced by Mr. Briscoe from forty years to life imprisonment.  See Apprendi v. New Jersey, supra.  In the former cases involving rulings made during Sentencing hearings, the standard of proof was that of proof by a preponderance of the evidence, one that is substantially less burdensome than proof beyond a reasonable doubt, the highest standard of proof that exists in American jurisprudence.  See generally, United States v. Richards, 27 F.3d 465, 4468-469 (10th Cir. 1994).  While the proof offered by the government at trial in the case at bar arguably may have met the preponderance of the evidence standard of proof, it falls short of the proof beyond a reasonable doubt standard.

### C.     The Testimony of Stacey Turner

#### i.     "I have never seen crack cocaine gain weight over time"[10].

During her direct examination, Ms. Turner boldly testified that in her experience she had never observed a sample of crack cocaine that increased in weight with the passage of time.  [TT at 80-81.]  Despite her testimony in this regard, Ms. Turner admitted that in the instant case two of the three samples of crack cocaine actually increased in weight from the time the samples were weighed by the DEA Agents who sent the samples to the DEA lab until the time the samples were weighed by Ms. Turner at the DEA lab.  [TT at 84-85,87-88.]  Specifically, the March 20, 2006 sample, which originally weighed 51.83 grams when sent to the DEA lab was found to weigh 52.1 grams when weighed by Ms. Turner for a total weigh gain of 0.27 grams.  [TT at 84-85.]

---

[10]     [TT at 80-81.]

In this same vein, the all important July 19, 2006 crack cocaine sample, which originally weighed 79.62 grams when sent to the DEA lab was found to weigh 80.0 grams when weighed by Ms. Turner for a total weight gain of 0.38 grams. [TT at 878-88.]

    **ii.**    **"[I]t is a common practice with the chemists that our weights tend to be off"[11].**

At the conclusion of Ms. Turner's testimony, the Court directed a question to her regarding the increase in the weight of the July 19, 2006 crack cocaine sample. [TT at 101-102.] In response, Ms. Turner merely speculated that the increase in weight in the sample might have had something to do with the "calibration of the balances" without making any mention of other factors that may have contributed to the weight gain such as the relative humidity of the environment in which the sample was weighed. [TT at 100,102.] Thus, Ms. Turner was unable to relate a scientific explanation for the weight gain in the July 19, 2006 sample and the government offered no testimony regarding the calibration of the scales used by the DEA Agents who first weighed the sample to suggest that their scales were improperly calibrated.

Ms. Turner further admitted that variances in weighings are commonly experienced at the DEA lab, stating, "But it is a common practice with the chemists that our weights tend to be off." [TT at 102.] She went on to explain that only in those cases where there is a two gram weight differential does DEA lab policy require a re-weighing that is witnessed by another DEA chemist. [TT at 102.] Although DEA lab policy did not dictate that a re-weighing had to occur with reference to the July 19, 2006 crack cocaine sample, the admitted variances in DEA lab weighings call into question the

---

[11]    [TT at 102.]

accuracy of the September 8, 2006 weighing that was conducted by Ms. Turner when the accuracy of her weighing is measured by the proof beyond a reasonable doubt standard.

### iii.    "…I don't know what, you know, the rate of, you know, evaporation would be"[12].

The government's theory that the September 8, 2006 weighing of the July 19, 2006 crack cocaine sample should be credited over the January of 2007 re-weighing of the same sample by M. Beth Minnigh, Ph.D. is based on the government's claimed theory that Dr. Minnigh found a decreased weight due of the evaporation of water from the sample over the passage of time.  Despite the government's reliance on this theory, when asked by the prosecutor at trial upon what does the rate of evaporation depend, Ms. Turner admitted that she was unaware of any actual study, scientific or otherwise, that had been performed regarding the rate of evaporation of water from a sample of crack cocaine.  [TT at 81,96.]  Furthermore, she plainly admitted that she did not know what the rate of evaporation of water from a sample of cocaine would be.  [TT at 81.]

The government presented Ms. Turner as an expert witness at trial; yet, her testimony was devoid of any empirically based scientific explanation as to the rate of evaporation of water from a sample of crack cocaine.  Without a known rate of evaporation of water from crack cocaine, it is impossible to verify that the decrease in weight actually resulted from the evaporation of water from the sample and it is impossible to rule out any other factors from improper weighing techniques to the loss or theft of a portion of the sample as a reason for the decrease in sample weight.[13]  Quite

---

[12]       [TT at 81.]

[13]       The government's evaporation theory is further called into question in light of the fact that both Ms. Turner and Dr. Minnigh observed the July 19, 2006 sample of crack cocaine to be rather moist when

simply, the lack of any know scientific data regarding the rate of water evaporation from crack cocaine renders Ms. Turner's testimony regarding the reasons for variances in weight mere speculation and adds to the reasonable doubt regarding the validity of the government's evaporation theory.[14]

### iv.    "I am a hundred-percent confident it weighed over 50 grams"[15].

While Ms. Turner personally may have been "a hundred-percent" confident that the July 19, 2006 crack cocaine sample weighed in excess of 50 grams, her personal opinion in this regard fails to meet the requisite standard of admissibility for the opinion of a scientific expert.  The requisite standard of admissibility is whether the scientific expert witness' opinion is being rendered to a reasonable degree of scientific certainty or probability.  Since Ms. Turner did not testify that her opinion that the weight of the crack cocaine in question exceeded 50 grams was rendered to a reasonable degree of scientific certainty or probability, her alleged "expert" opinion should not be considered. Accordingly, in the absence of a properly rendered expert opinion, the government failed to establish beyond a reasonable doubt that the weight of the July 19, 2006 crack cocaine sample was in excess of 50 grams.

---

weighing the sample.  [TT at 71,97,102-103; DT at 9,13,16.]  Had water actually evaporated from the sample, one would expect the sample to be dry or at least less moist when tested four months later.

[14]    It is submitted that given the lack of any empirically based scientific study known to Ms. Turner regarding the rate of evaporation of water from a sample of crack cocaine, Ms. Turner should have been precluded from giving any alleged "expert" testimony about the government's water evaporation theory under the principles of Daubert v. Merrill Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993), and Kumho Tire Co. v. Carmichael, 119 S.Ct. 1167 (1999).  See also F.R.E. 702((1) and (2) that require that expert opinion testimony must be "based upon sufficient facts or data" and must be "the product of reliable principles and methods".

[15]    [TT at 82.]

[14]

#### D.    The testimony of M. Beth Minnigh, Ph.D.

In contrast to Ms. Turner, Dr. Minnigh testified that she followed all recognized scientific principles in conducting her re-weighing of the July 19, 2006 crack cocaine sample.  [DT at 7.]  Moreover, Dr. Minnigh related that she rendered her opinion that the weight of the July 19, 2006 crack cocaine sample was 47.41 grams to a reasonable degree of scientific probability.  [DT at 8,10.]  Although she candidly explained that she was unable to empty all crack cocaine residue from the bag because the crack cocaine was quite moist, she removed as much as she could.[16]  [DT at 9,16.]  Ms. Turner encountered the same difficulty due to the moist nature of the crack cocaine, indicating that she was sure there was crack cocaine residue left in the bag and that it was not her practice to scrape all remaining residue out of a bag.  [TT at 74,102-103.]  Dr. Minnigh also confirmed Ms. Turner's statement that it is common for there to be variances in multiple weighings of drug samples.  [DT at 9,13; TT at 102.]  Lastly, Dr. Minnigh stated that after conducting a weighing of the crack cocaine in question, less than 0.1 grams of cocaine residue would be left in the weighing boat used in the lab.  [DT at 15.]

#### D.    Conclusion:  The Government Failed to Prove Beyond a Reasonable Doubt that the July 19, 2006 Crack Cocaine Sample Weighed in Excess of 50 Grams.

In summary, the government bears the burden of proving each and every element of an indicted offense beyond a reasonable doubt.  The sole issue contested at the bench trial in the case sub judice was whether the government proved beyond a reasonable doubt that the July 19, 2006 crack cocaine sample  weighed in excess of 50 grams.

---

[16]    As previously indicated in footnote 131, both Ms. Turner and Dr. Minnigh commented on the moist nature of the July 19, 2006 crack cocaine sample. [TT at 71,97,102-103; DT at 9,13,16.]

The government's witness, Ms. Stacey Turner of the DEA Northeast Regional Lab testified that she determined the weight of the crack cocaine sample in question to be 51.5 grams on September 8, 2006. The defense expert witness, M. Beth Minnigh, Ph.D., testified that she determined to a reasonable degree of scientific certainty the weight of the crack cocaine sample in question to be 47.61 grams.

The government attempted to explain the decrease in weight to be the result of evaporation of water from the crack cocaine. However, no measurements were ever taken of the initial water content of the crack cocaine sample and no information or data, scientific or otherwise, was presented by the government regarding the rate at which water evaporates from crack cocaine. In fact, Ms. Turner was unaware of any scientific studies proving that water evaporates from crack cocaine. Ms. Turner's testimony regarding the government's water evaporation theory was not based upon sufficient facts and data and Ms. Turner's conclusions regarding the evaporation of water from the crack cocaine sample were not the product of reliable scientific principles and methods. In essence, Ms. Turner's opinion was an unproven, speculative theory and not an empirically based, scientifically proven principle. As such, Ms. Turner's testimony in support of the government's water evaporation theory does not eradicate all reasonable doubt regarding the government's contention that the weight of the July 19, 2006 crack cocaine sample exceeded 50 grams, especially in the wake of Dr. Minnigh's independent weighing of the crack cocaine sample that found the sample to weigh well under 50 grams.

Although other courts have accepted the water evaporation theory as an explanation for the decrease in the weight of a sample of crack cocaine over time, there is

[16]

no evidence before this Court as to what specific evidence or expert testimony the government presented in those cases and whether it was grounded upon empirically based scientific studies and principles. Keeping in mind that the preponderance of the evidence standard of proof in the Sentencing hearing cases relied upon by the government was significantly less than the proof beyond a reasonable doubt standard that controls in the case at bar, testimony along the lines of that presented by Ms. Turner may have been sufficient to carry the day for the prosecution in Sentencing hearing cases. However, when the testimony and evidence in the instant case is assessed applying the proof beyond a reasonable doubt standard, it is submitted that the government has failed to meet their burden of proof for the reasons set forth herein. Accordingly, Defendant Anthony Mark Briscoe must be found not guilty of Possession With Intent to Distribute in Excess of 50 Grams of Crack Cocaine, but instead, must be found guilty of Possession With Intent to Distribute in Excess of 5 Grams of Crack Cocaine.

**WHEREFORE,** Defendant Anthony Mark Briscoe respectfully requests that this Honorable Court enter a finding of not guilty as to Count I of the Indictment, to wit, Possession with Intent to Distribute More than 50 Grams of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii), but guilty of Possession with Intent to Distribute More than 5 Grams of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).

Respectfully submitted,

/s/ John S. Malik
JOHN S. MALIK
100 East 14th Street
Wilmington, Delaware 19801
(302) 427-224

[17]

/s/ Jay C. Whittle
JAY C. WHITTLE
100 East 14th Street
Wilmington, Delaware 19801
(302) 427-2247
 Attorneys for Defendant,
 Anthony M. Briscoe

Dated: June 28, 2007

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-83-GMS |
| | : | |
| ANTHONY MARK BRISCOE, | : | |
| | : | |
| Defendant. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, John S. Malik, do hereby certify this 28th day of June, A.D., 2007, that I have caused to be delivered by electronic delivery one copy of Defendant Briscoe's Motion for Proposed Findings of Fact and Conclusions of Law to be served upon the following individual at the following address:

Ilana Eisenstein, Esquire
Assistant United States Attorney
United States Attorney's Office
Nemours Building
1007 Orange Street, Suite 700
Wilmington, Delaware 19801

/s/ John S. Malik
JOHN S. MALIK
100 East 14th Street
Wilmington, Delaware 19801
(302) 427-2247
Attorney for Defendant,
  Anthony M. Briscoe

[19]