IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. Action No.  06-83 GMS |
| ) | |
| ANTHONY MARK BRISCOE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM**

**I.    INTRODUCTION**

On August 1, 2006, the Grand Jury for the District of Delaware returned a three-count Indictment against the defendant, Anthony Mark Briscoe ("Briscoe"), charging him with one count of possession with intent to deliver over 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count I) and two counts of distribution of more than 5 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Counts II and III).  On May 21, 2007, the court held a bench trial in the matter.[1]  At trial, Briscoe stipulated to each of the elements of Counts II and III of the Indictment, and stipulated that, on July 20, 2006, he possessed a detectable quantity of cocaine base with the intent to distribute it.  (See Gov't Ex. 1; Trial Transcript ("Tr.") at 20-21.) Accordingly, the only contested issue at trial was the amount of cocaine base that Briscoe possessed on July 20, 2006.  After having considered the testimony and other evidence adduced at trial, and the arguments presented in the parties' submissions on the issue, the court concludes that the

---

[1] Prior to the scheduled jury trial, Briscoe filed a motion for a non-jury trial (D.I. 28), which the court granted on May 9, 2007.  (See D.I. 29).

government has proven the elements of the charged offenses beyond a reasonable doubt, and finds Briscoe guilty of the offenses charged in Counts I-III of the Indictment.

## II.    FINDINGS OF FACT

During the bench trial, the United States called three witnesses: David B. Hughes ("Hughes"), a special agent with the Drug Enforcement Agency (the "DEA"), Eric G. Miller ("Miller"), also a special agent with the DEA, and Stacey Turner ("Turner"), a forensic chemist with the DEA. The defense called one witness by deposition: Margaret Beth Minnigh, Ph.D. ("Dr. Minnigh), the director of research and development and the lab manager at Pharmakon/ALTCS Lab. After listening to the testimony and observing the demeanor of each live witness, as well as reviewing the videotaped deposition of Dr. Minnigh, the court concludes that the accounts of the facts are credible. The following represents the court's essential findings of fact as required by Rule 23(c) of the Federal Rules of Criminal Procedure.

### A.    The Investigation

In the Spring of 2006, the DEA began investigating Briscoe. (Tr. at 25.) Detective Don Pope, a DEA task force officer, initiated the investigation through the use of a confidential source (the "CS") who, on March 20, 2006, began making controlled purchases from the defendant. (Id.) The CS made two purchases from Briscoe, on March 20, 2006 and April 14, 2006. (Id. at 26.) On each occasion, the defendant arranged for the delivery of one ounce of crack cocaine for a price of $800 during tape-recorded, monitored telephone conversations with the CS. (Id. at 25-27.) On March 20, 2006, Briscoe distributed 25.4 grams of crack cocaine to the CS, and on April 14, 2006 he distributed 16 grams of crack cocaine. (Gov't Ex. 1.) Both transactions occurred in between the 1200 and 1300 blocks of Claymont Street in Wilmington, Delaware. (Id.; Tr. at 27.)

On July 19, 2006, the DEA used the same CS to set up another controlled purchase. (Tr. at 27-28.) Hughes and DEA Task Force Officer Thad Boyce ("Boyce") met with the CS and placed a consensual monitored tape-recorded telephone call to Briscoe. (Id. at 28.) Briscoe and the CS made several telephone calls to each other and, during the course of those telephone calls, the CS arranged to purchase two ounces, or approximately 56.6 grams, of crack cocaine from Briscoe for $1,600.00. (Id. at 28-30.) The CS was to meet Briscoe on July 20, 2006, between the 1200 and 1300 blocks of Claymont Street, Wilmington, Delaware, as the CS had done with respect to the prior two purchases. (Id. at 30.) On July 20, 2006, Boyce and Hughes dropped off the CS and set up surveillance in and around the 1200 block of Claymont Street. (Id. at 31-32.) Shortly thereafter, Briscoe arrived at the pre-arranged location to meet the CS and deliver the drugs. (Id. at 33.) The CS approached Briscoe's vehicle, at which point Hughes, Boyce, and several other officers converged on it and placed Briscoe under arrest. (Id.)

After Briscoe's arrest, Hughes transported him back to the DEA's Wilmington office, while Boyce and Miller transported Briscoe's vehicle back to the DEA office. (Id. at 35.) Hughes and Boyce conducted a search of the vehicle and found a package containing crack cocaine under the rear driver's side seat. (Id. at 36.) Hughes then photographed and field tested[2] the substance, placed it into a heat-sealed envelope, weighed the substance, and transferred it to the DEA lab in New York for analysis.[3] (Id. at 37-38, 40.) At all times, the proper chain of custody was maintained with

---

[2] A field test kit contains three little ampules that test for the presence of cocaine. (Trial Transcript ("Tr.") at 39.) An officer will remove a sample of the seized substance, place it inside the test kit, and break the ampules from left to right. (Id. at 39-40.) The test turns an ice blue color if cocaine is present in the sample. (Id. at 40.)

[3] Hughes recorded a gross weight of 79.62 grams for the substance seized from Briscoe on July 20, 2006.

regard to the drugs seized, and they were handled in accordance with DEA policy and procedure. (Tr. at 41-42; Gov't Ex. 1.)

### B. The Government's Weight Analysis of the Seized Drugs

DEA forensic chemist Turner analyzed the drugs the officers seized from Briscoe on July 20, 2006. (See Gov't Ex. 7.) Turner received the drugs on September 8, 2006 and analyzed them on September 12, 2006. (Tr. at 70.) Turner observed the substance she received and noted that it was broken up pieces of a rock. (Id.) At that time, Turner did not notice any moisture in the substance. (Id. at 71.) Turner then analyzed the substance. First, Turner weighed the drugs with all of the packaging to obtain the gross weight, which was 80.0 grams. (Id. at 72; Gov't Ex. 5.) She then removed the drugs from the packaging and weighed the packaging alone. (Tr. at 72.) Turner next determined the net weight, or the weight of only the drugs, by subtracting the weight of the packaging from the gross weight. (Id. at 72, 74.) She recorded the net weight in her report as 51.5 grams.[4] (Id. at 77.) Finally, Turner ran a series of tests on the drugs to confirm the identity of the sample. (Id.) Turner also noted a "reserve weight" of 50.0 grams in her report, which is the weight of the drugs remaining after she conducts all of her testing. (Id. at 75.) Turner testified that she could not remove all of the drugs from the bag when weighing them, resulting in a lower reported weight. (Id. at 74-75.)

---

[4] The actual net weight that Turner obtained was 51.59 grams. According to DEA procedure, however, she truncated the last decimal place and reported the weight to the tenth of a gram. (Tr. at 77.)

4

To measure the weight of the drugs, Turner used a Sartorious digital scale or balance. (Tr. at 77.) The balance is calibrated every month in-house, and every year by an outside agency. (Id. at 77-78.) It is certified as accurate to the hundredth of a gram, or two decimal places. (Id. at 79.) Turner calculated and reported the net weight of the drugs to the tenth of a gram and, based upon that measurement, testified that the balance was "a hundred percent accurate to the weight that she weighed for [the drug] exhibit. (Id.) Turner also reported in her notes that the crack cocaine sample was "extremely wet." (Id. at 102; Gov't Ex. 7.)

### C.   The Defense's Weight Analysis of the Seized Drugs

In December 2006, Briscoe's counsel retained Dr. Minnigh to conduct a re-weighing of the seized drugs. (Deposition Transcript of Dr. Minnigh ("D.Tr.") at 7.) Dr. Minnigh conducted her weight analysis on a Mettler AE 50 balance and followed all proper scientific techniques for weighing a sample of a controlled substance. (Id.) Prior to weighing the substance, Dr. Minnigh observed that it was moist, and she could not remove all of it from the packaging.[5] (Id. at 8-9, 16.) Dr. Minnigh conducted her weight analysis by opening the packages, shaking their contents into a weighing boat, and placing the boat on the balance. Using this procedure, Dr. Minnigh obtained a weight of 47.41 grams for the seized drugs, which she testified was rendered to a reasonable degree of scientific probability. (Id. at 8.) She testified that she was aware that the DEA had previously weighed the drugs and obtained a weight of 51.5 grams. (Id. at 9.) According to Dr. Minnigh, variances in the weight of a drug sample that has been weighed various times are common. (Id.) When asked about her experience with regard to whether crack cocaine diminishes in weight over

---

[5] Dr. Minnigh could not quantify how much of the drug substance that she could not weigh, i.e. the portion that remained inside the packaging. (D.Tr. at 16.)

5

time, Dr. Minnigh answered that she "[could not] speak specifically to that." (Id. at 13.)

### D.   The Properties of Crack Cocaine over Time

Miller and Turner testified regarding the properties of crack cocaine over time. Miller, who has extensive training and experience in the manufacture or "cooking" of crack cocaine, testified that crack cocaine is made by dissolving powder cocaine in water, adding baking soda, and then applying a heat source to the mixture. (Tr. at 59-60.) After heating, the finished product, which floats to the top of the mixture, is removed and allowed to dry. (Id. at 60.) Miller further testified that there is a relatively new method employed in Delaware, known as the "fluffing method," in which the individual making the product heats and removes the mixture from the heat source several times, adding water and "continuing to whip" the mixture to bring the weight up in the final product. (Id.) The weight of the final product is higher because more water is absorbed by it. (Id.) Soon after it is cooked, crack cocaine has a wax-like consistency that is soft to the touch. (Id. at 61.) Over time, however, the consistency and appearance of the crack cocaine changes: over a short period of time it remains wax-like and hardens, but eventually it begins to lose its moisture, evaporate, and liquify.[6] (Id. at 62.) The result of the changes in the consistency and appearance of crack cocaine over time is a decrease in weight. (Id. at 63-64.) Miller testified that he was aware of specific occasions or examples of crack cocaine decreasing in weight over time, but he had never seen a case in which crack cocaine gained weight over time. (Id. at 64.)

---

[6] Miller has personally observed exhibits of crack cocaine break down into various states, including a pure liquid state. (Tr. at 63.)

Turner, who also has experience with the weight of crack cocaine over time, agreed with Miller that, over time, crack cocaine becomes wet and loses moisture through the evaporation of the water used in the cooking process resulting in a decreased weight. (Tr. at 79-80.) Turner added that the evaporated water escapes the bag containing the crack cocaine, because the bag is porous. (Id. at 80.) Turner further explained that evaporation occurs more rapidly once a sample of crack cocaine is exposed to the air or when a sample has been ground.[7] (Id. at 81-82.) Turner indicated in her field notes that the crack cocaine sample from the July 20, 2006 transaction was "extremely wet." (Id. at 102.) She explained to the court that she made the notation, because it "had become practice" in the DEA lab, given that "it is standard that it [crack cocaine] does lose weight over time." (Id.)

## III.   CONCLUSIONS OF LAW

### A.   Counts II and III of the Indictment

As previously mentioned, on August 1, 2006, the Grand Jury for the District of Delaware charged the defendant with two counts of distribution of more than 5 grams of cocaine base, on March 20, 2006 (Count II) and April 13, 2006 (Count III), in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(B). To show that Briscoe is guilty of the charged offenses, the government is required to prove the following four elements beyond a reasonable doubt: (1) the defendant possessed a controlled substance; (2) the defendant knew that he possessed some type of controlled substance; (3) the defendant distributed that substance; and (4) the substance weighed more than 5 grams and contained a detectable amount of cocaine base. 18 U.S.C. §§ 841(a)(1) and (b)(1)(B); *see United States v. Barbosa*, 271 F.3d 438, 457 (3d Cir. 2001). In the present case, Briscoe stipulated to each

---

[7] When the sample is ground, more surface area is exposed to the atmosphere, which results in more evaporation. (Tr. at 82.)

of the elements of the offenses charged in Counts II and III, and admitted that he distributed 25.4 grams of crack cocaine on March 20, 2006, and 16.0 grams of crack cocaine on April 14, 2006. (Gov't Ex. 1.) Accordingly, the government has established each of the elements of Counts II and III beyond a reasonable doubt.

### B. Count I of the Indictment

Count I of the indictment charges Briscoe with possession with the intent to distribute more than 50 grams of cocaine base on July 20, 2006, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Again, to show that Briscoe is guilty of the charged offense, the government is required to prove the following four elements beyond a reasonable doubt: (1) the defendant possessed a controlled substance; (2) the defendant knew that he possessed some type of controlled substance; (3) the defendant distributed that substance; and (4) the substance weighed more than 50 grams and contained a detectable amount of cocaine base ("crack cocaine").[8] 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); *see Barbosa*, 271 F.3d at 457. Here, Briscoe has stipulated to all elements of the charged offense, except the weight of the substance he possessed. (See Gov't Ex. 1.) Thus, the court's conclusions of law pertain only to the quantity of the substance that Briscoe possessed on July 20,

---

[8] In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that any fact, other than the fact of a prior conviction, that increases the statutory maximum penalty to which a defendant is exposed must be submitted to a judge or jury, and proved beyond a reasonable doubt. 530 U.S. at 490; *United States v. Grier*, 475 F.3d 556, 562 (3d Cir. 2007). In the present case, the government has charged Briscoe with violating 21 U.S.C. § 841. The statutory penalties imposed in 21 U.S.C. § 841 are determined, in part, by the quantity and type of drug a defendant possesses. For example, a person who violates section 841(a) by possessing a substance containing 5 grams of cocaine base will receive a maximum term of imprisonment of 40 years, while a person who violates section 841(a) by possessing a substance containing 50 grams of cocaine base will receive a maximum term of life imprisonment. 21 U.S.C. § 841(a), (b)(1)(A), and (b)(1)(B). Thus, in order for Briscoe to be adjudged guilty of the offense, the government must prove beyond a reasonable doubt that he possessed a mixture or substance that weighed more than 50 grams and contained a detectable amount of cocaine base.

2006.

Drug weight is determined by the net weight of the substance containing cocaine base. Here, Turner, the DEA forensic chemist, measured the net weight of the substance seized from Briscoe on September 12, 2006, which she recorded as 51.5 grams. (Tr. at 77.) She measured the weight using a Sartorious digital balance that was certified as accurate to the hundredth of a gram, or two decimal places. (Id. at 77-79.) Turner also testified that the balance was "a hundred percent accurate. . . ." (Id. at 79.) As such, the court's inquiry should end here; however, additional record evidence exists to support the government's position that the cocaine base seized from Briscoe on July 20, 2006 weighed more than 50 grams.

First, both Turner and Dr. Minnigh testified that they could not remove all of the substance from its packaging when weighing it, which resulted in a lower reported weight. (See Tr. at 74-75, D.Tr. at 8-9, 16.) Further, Dr. Minnigh recorded 47.41 grams as the weight of the substance, but testified that drug weights can vary, and had no specific experience with the changes in crack cocaine over time. (D.Tr. at 9-10, 13.) Two of the government witnesses, on the other hand, had extensive experience with the properties of crack cocaine and provided uncontroverted testimony that crack cocaine loses weight over time through the evaporation of the water used in its manufacture. Specifically, Miller testified that crack cocaine has a wax-like consistency after it is cooked which, over time, begins to liquify. (Tr. at 61-62.) As the product liquifies, water escapes through evaporation, resulting in a decrease in weight over time. (Id. at 63-64.)

Turner, the government's expert on in the issue, agreed with Miller that crack cocaine becomes wet and loses moisture through evaporation of the water used in the cooking process. (Id. at 79-80.) Turner further added that, because plastic bags are porous, the evaporating water escapes

9

the bag containing the crack cocaine. (Id. at 80.) Finally, she explained that evaporation occurs more rapidly once a sample of crack cocaine is exposed to the air or after a sample has been ground. (Id. at 81-82.)

Here, Turner tested the substance on September 12, 2006. At this time, she noted in her report that the sample was "extremely wet," because it had become practice in the DEA lab, given the fact that crack cocaine loses weight over time. When Turner weighed and tested the sample of crack cocaine, she exposed it to the air. Turner also ground the sample, exposing more of the crack cocaine's surface area to the air leading to further evaporation. Dr. Minnigh further exposed the sample of crack cocaine, which was already moist or wet, to the air when she re-weighed the sample in December 2006. Given the foregoing, the court concludes that the sample of crack cocaine had already begun to break down when Turner weighed and tested it on September 12, 2006. The court further concludes that following Turner's grinding of the sample and exposing it to the air during testing, the break down, evaporation, and weight loss would have continued, and continued at an increased rate, prior to Dr. Minnigh's re-weighing. Accordingly, the weight disparity of the crack cocaine between the September 2006 weighing and the December 2006 re-weighing is attributable to the break down of the substance into its component parts, including water, and subsequent evaporation of the water.[9,10] As such, the government has proven every element of the offense

---

[9] Both the government and the defendant cite to case law in which courts discuss the weighing and re-weighing of crack cocaine and determine which weight should control. The cited authority is not directly on point, because the courts making those determinations did so in the context of sentencing, where the government's burden is proof by a preponderance of the evidence, rather than in the context of a trial, where its burden is proof beyond a reasonable doubt. The court conducted its own research on the issue and finds persuasive a case with similar facts to those in the present case. In *United States v. Johnson*, 129 Fed. Appx. 966 (6th Cir. 2005), the defendant filed a motion for acquittal and argued to the district court that the government did not carry its burden of proving that the weight of the drugs he possessed was 50

charged in Count I of the indictment, and Briscoe is adjudged guilty of possession with intent to deliver over 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

## IV.  CONCLUSION

For the aforementioned reasons, the court finds that the government has met its burden of proving the elements of the offenses charged in Counts I-III of the Indictment beyond a reasonable doubt. Therefore, the court finds the defendant guilty of the following offenses: two counts of possession with intent to deliver over 5 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1)

---

grams or more as charged in the indictment. 129 Fed. Appx. at 971. The district court denied the defendant's motion, and he appealed, arguing that at trial the drugs he possessed weighed only 33.15 grams, not the 50 or more grams charged. *Id.* The Sixth Circuit concluded that it was proper for a rational trier of fact to find that the drugs weighed 50 grams or more with the evidence adduced at trial. *Id.* Specifically, the Sixth Circuit pointed to the testimony of a forensic chemist, who testified that "the disparity in weight was reasonable because over three months had elapsed between the arrest and the testing," during which time the "water or other solvents in the crack cocaine could have evaporated, causing the crack cocaine to weigh less." *Id.*

[10] The defendant attempts to establish reasonable doubt through Turner's testimony. The defendant notes that even though Turner testified she had never observed crack cocaine gain weight over time, she admitted that some of the samples of crack cocaine in the present case increased in weight during the time between the initial weighing by the DEA agents and her weighing at the DEA lab. Thus, the defendant argues that Turner's testimony regarding the weight of the drugs is inconsistent. The court disagrees. Turner testified that it is common for the weights that agents obtain for samples to be different from those that the chemists obtain. (Tr. at 102.) Turner further testified, however, that she uses a different balance than the agents, and that the difference in weights has to do with the calibration of the balances. (Id.)

The defendant also appears to take issue with Turner's qualifications as an expert, arguing that she was offered as an expert at trial, but did not testify regarding an empirically based scientific explanation as to the rate of evaporation of water from a sample of crack cocaine. The court is not persuaded. The defendant did not object to Turner's qualifications as an expert in the field of forensic chemistry. The defendant also did not object to any of Turner's testimony regarding the makeup and properties of crack cocaine. Moreover, the critical issue here regarding the properties of crack cocaine was not the rate at which water evaporates from a given sample but, rather, the fact that crack cocaine loses water over time through evaporation. Finally, the defendant's argument could be directed to his own expert witness, who could not specifically speak to the properties of crack cocaine over time.

and (b)(1)(B), and one count of possession with intent to deliver over 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (B)(1)(A).


Dated: November 13, 2007        /s/ Gregory M. Sleet
                                CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. Action No. 06-83 GMS |
| ) | |
| ANTHONY MARK BRISCOE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1.  The defendant is adjudged guilty of two counts of possession with intent to deliver over 5 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and one count of possession with intent to deliver over 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (B)(1)(A).


Dated: November 13, 2007             /s/ Gregory M. Sleet
                                     CHIEF, UNITED STATES DISTRICT JUDGE